IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01255-PAB

DEBRA M. RUH,

       Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.
_____

**ORDER**
_____

This matter is before the Court on plaintiff Debra Ruh's complaint [Docket No. 1], filed on May 13, 2013.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.[1]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On April 14, 2010, plaintiff filed for disability benefits under Title II.  R. at 11.  Plaintiff alleged that she had been disabled since June 8, 2009.  *Id.*  After an initial administrative denial of her claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on August 31, 2011.  *Id.*  On October 20, 2011, the ALJ issued a decision denying plaintiff's claim.  *Id.* at 20.

_____

[1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

The ALJ found that plaintiff had the following severe impairments: "multi-level degenerative disc disease status-post L4-5 fusion and bilateral sacroiliitis."  R. at 13. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 15, and ruled that plaintiff had the residual functional capacity ("RFC") to:

> lift and carry twenty pounds occasionally and ten pounds frequently.  She can sit for six hours out of an eight-hour workday with normal breaks, and stand or walk for two hours out of an eight-hour day with normal breaks.  The claimant can perform push/pull motions with her upper and lower extremities, but within the weight restrictions given.  The claimant must avoid unprotected heights and moving machinery.  She can occasionally stoop, crouch, kneel and crawl.  She cannot climb ladders, ropes [or] scaffolds.

R. at 15.  Based upon this RFC and in reliance on the testimony of the vocational expert ("VE"), the ALJ concluded that plaintiff is "capable of performing past relevant work as an information technology support manager" and that "there are other jobs existing in the national economy that she is also able to perform."  R. at 18-19.

The Appeals Counsel denied plaintiff's request for review.  R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the

record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## C.  Plaintiff's Objections to the ALJ's Decision

### 1. Credibility

Plaintiff argues that the ALJ failed to properly evaluate the credibility of plaintiff's subjective complaints.  Docket No. 9 at 4.  "Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are supported by substantial evidence.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Credibility determinations should not be conclusory, but instead "closely and affirmatively linked" to evidence in the record.  *Id.*  In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. 404.1529(c)(4)

("We will consider whether there are any inconsistencies in the evidence and the extent

to which there are any conflicts between your statements and the rest of the evidence . . . .").  The ALJ must set forth "the specific evidence he relies on in evaluating the claimant's credibility," but is not required to undergo a "formalistic factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  SSR 96-7p, 1996 WL 374186, at *5.  While evidence of a claimant's daily activities "may be considered, along with medical testimony, in determining whether a person is entitled to disability benefits," such daily activities do not "in themselves establish that a person is able to engage in substantial gainful activity."  *Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir. 1987).

At the hearing, plaintiff testified that she could sit for 20 minutes at a time, that her legs went numb after standing for 17 seconds, and that she could walk for less than five minutes at a time.  R. at 33-35.  Plaintiff stated that she often uses a cane.  R. at 48.  She stated that she could lift one pound at a time.  R. at 35.  Plaintiff also indicated that the side effects from her medications made her drowsy and constipated.  R. at 41-42, 49.  She stated that she spends most of her day lying down.  R. at 49.  In her previous position as an IT manager, plaintiff testified that she received help lifting things from her co-workers and would be pushed from building to building in a wheelchair.  R. at 51.

The ALJ relied on a number of factors in assessing the credibility of plaintiff's complaints.  The ALJ discussed plaintiff's work history:

The claimant was able to return to work at substantial gainful activity levels

6

> following lumbar surgery in 2006. The claimant testified that she stopped working in June of 2009 due to a layoff rather than because of the allegedly disabling impairments. Further, there is no evidence of a significant deterioration in the claimant's medical condition since that layoff. A reasonable inference, therefore, is that the claimant's impairment would not prevent the performance of that job, since it was being performed adequately at the time of the layoff despite a similar medical condition. The claimant testified that after the layoff she had been looking for management work in the health care field. This indicates at least a perceived ability to engage in substantial gainful activity.

R. at 16 (citations omitted). The ALJ also noted that the fact that plaintiff had been receiving unemployment benefits indicated a willingness and ability to work. *Id.* However, the ALJ acknowledged that receipt of unemployment does not preclude a finding of disability, but concluded that, when viewed in light of plaintiff's previous work, the receipt of unemployment benefits suggests a greater functional ability than plaintiff claimed. *Id.* The ALJ also concluded that plaintiff's activities of daily living were inconsistent with her subjective complaints, *id.*, noting that plaintiff

> lived with her disabled husband, disabled sister and her sister's spouse. She testified that she was able to drive, go out alone, read, use a computer, wash laundry, shop for groceries, clean her room, prepare simple meals, occasionally wash dishes and read. In a Function Report from July of 2010, the claimant indicated that she had no problems with personal care. She also indicated that she was able to prepare meals, clean, wash laundry, drive, shop in stores, pay bills, count change, handle a savings account, use a checkbook/money orders, read and spend time with others.

R. at 14 (citations omitted). The ALJ determined that plaintiff's complaints were inconsistent with the clinical evidence of record. R. at 16. The ALJ noted that physical examinations of plaintiff did not describe "any significant abnormalities," that plaintiff experienced pain relief with medication and injections, and that no treating or examining physicians "described any significant dysfunction relating to the claimant's cervical spine, shoulders, elbows, wrists, hips, knees or ankles." R. at 17.

7

Plaintiff asserts multiple objections to the ALJ's credibility determination. As a threshold matter, plaintiff's arguments, without explicitly saying so, largely claim that the evidence should be reweighed in plaintiff's favor. *See, e.g.*, Docket No. 9 at 6, 11-12. The Court will not reweigh the evidence or substitute its own discretion for that of the ALJ. *Musgrave*, 966 F.2d at 1374. Thus, to the extent plaintiff's arguments require the Court to reweigh the evidence, plaintiff's arguments fail. The Court also rejects any argument by plaintiff that the ALJ was required to consider all of the factors set forth under SSR 96-7p and 20 C.F.R. 404.1529(c). Docket No. 9 at 5, 9. So long as the ALJ sets forth the evidence relied upon in evaluating plaintiff's credibility, such formality is not required. *See Qualls*, 206 F.3d at 1372.

Plaintiff asserts that the ALJ failed to consider an outpatient progress report, wherein plaintiff's husband told Dr. John Tyler and Ms. Monica Preston, A.N.P., that plaintiff "has been bed bound . . . two days at a time." Docket No. 9 at 6 (quoting R. at 254). Plaintiff also argues that the ALJ should have noted that plaintiff followed her physician's treatment instructions. *Id.* at 7. The ALJ "is not required to discuss every piece of evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), and these facts do not otherwise overwhelm the ALJ's findings. *See Musgrave*, 966 F.2d at 1374.

Plaintiff challenges the ALJ's evaluation of plaintiff's activities of daily living. Docket No. 9 at 6. Plaintiff argues that the ALJ misinterpreted the Function Report, which plaintiff claims establishes that she cannot stay in any position very long, spends most days lying in bed, and can only do household chores with certain accommodations, which is contrary to the ALJ's findings. *Id.* However, the Function

8

Report also indicates that plaintiff can prepare meals, albeit while using a stool, has the ability to do laundry, can drive a car and go out alone, and shops for food, sometimes with the assistance of a cart.  R. at 174-75.  Plaintiff fails to account for her hearing testimony as well, where she stated that she was able to drive, R. at 38, infrequently go out to eat, R. at 39-40, do her own laundry, R. at 45, go grocery shopping with her husband while using a motorized cart, *id.*, clean her room and bathroom with breaks, R. at 46, help her sister wash dishes, *id.*, and prepare simple meals.  R. at 46-47.  Plaintiff's argument asks the Court to find that the ALJ should have given greater weight to the limitations and lesser weight to the capabilities expressed in the Function Report, which the Court will not do.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Those aspects of the Function Report that plaintiff identifies do not overwhelm the ALJ's conclusions regarding plaintiff's activities of daily living and the Court is otherwise satisfied that the such conclusions are supported by substantial evidence.  *See id.*

Plaintiff maintains that the ALJ failed to discuss the "type, dosage, effectiveness and side effects of the Plaintiff's medication that she takes or has taken to alleviate pain or other symptoms."  Docket No. 9 at 7; *see also* SSR 96-7p, 1996 WL 374186, at *3.  Plaintiff claims that she has taken "heavy duty narcotic medications" and suffers medication side effects, both of which plaintiff argues the ALJ failed to mention.  Docket No. 9 at 7.  Although the medication plaintiff took to alleviate pain does not appear to have weighed heavily in the ALJ's credibility determination, the Court disagrees with plaintiff's position that the ALJ failed to discuss this particular factor.  The ALJ explicitly concluded that plaintiff "was noted to experience pain relief with treatment including narcotic pain medication and sacroiliac joint injections."  R. at 17.  Although plaintiff

9

argues that the ALJ should have specifically noted the medications and dosages that plaintiff has used in an attempt to control her pain, Docket No. 9 at 7, plaintiff provides no authority requiring the ALJ to do so.  *See Shockley v. Colvin*, 564 F. App'x 935, 942 (10th Cir. 2014) (unpublished) (finding that plaintiff failed to show why the ALJ's credibility findings would have been different had ALJ mentioned all plaintiff's medications).  Moreover, plaintiff does not appear to dispute that the ALJ's conclusion that plaintiff experienced pain relief due to medications and injections was based upon substantial evidence, and the Court finds no basis for concluding otherwise.  *See* R. at 285 ("Debra reports that she continues to do much better now that she is on the methadone") R. at 281 ("[s]he remains well controlled utilizing methadone . . . and oxycodone"); R. at 280 ("Debra states that the Methadone and oxycodone that she utilizes works well for her pain management and provides her good relief.").  Thus, the Court cannot conclude that this aspect of the ALJ's decision was in error.

The Court turns to the issue of medication side effects.  Plaintiff argues that the ALJ's credibility determination was flawed because the ALJ failed to make specific findings considering the presence or absence of medication side effects.  Docket No. 9 at 7.  As a threshold matter, medication side effects were not specific evidence upon which the ALJ relied in evaluating plaintiff's credibility.  *See Qualls*, 206 F.3d at 1372.  Thus, the ALJ is required to discuss such evidence only if it is "uncontroverted evidence [s]he chooses not to rely upon, [or] significantly probative evidence [s]he rejects."  *Clifton*, 79 F.3d at 1009-10.  Plaintiff argues that there are "instances in the record noting the side effects from her narcotic medications," identifying the RFC questionnaire (the "questionnaire") completed by Dr. Tyler and Ms. Preston in support of her

10

assertion.  Docket No. 9 at 7 (citing R. at 273).  In response to a question asking for a description of "treatment and response including any side effects of medication," Dr. Tyler and Ms. Preston state, without additional explanation, "Drowsiness from opioids, dizziness from opioids."  R. at 273.  Plaintiff fails to cite any other evidence in the record concerning medication side effects.  Nonetheless, the Court notes that, during the hearing, the ALJ and plaintiff's counsel asked plaintiff whether she suffered from medication side effects and plaintiff responded that medications made her constipated and drowsy or fatigued, but the record contains no meaningful explanation of what, if anything, such side effects prevented her from doing.  R. at 41, 49.  Plaintiff also reported some dizziness, but was unsure if it was related to her medications.  R. at 48.  However, this evidence is not uncontroverted.  Dr. Tyler's and Ms. Preston's mention of side effects is somewhat contradicted by their own treatment notes.  *See* R. at 286 ("She reports that she has tolerated the Methadone very well and does not feel lethargic and is not having any bowel issues or nausea.").  Although plaintiff testified to suffering side effects, in the Function Report dated July 3, 2010, plaintiff checked a box indicating that her medications did not cause side effects.  R. at 179.

The question becomes whether the above-identified evidence was significantly probative on the issue of credibility so as to trigger the ALJ's duty to discuss such evidence.  On this point, plaintiff fails to establish the relevance of such evidence or otherwise explain how it would have affected a credibility analysis.  *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1173 (10th Cir. 2012) (holding that, where plaintiff did not allege any adverse effect on her ability to work due to discontinuance of medication, ALJ's failure to mention side effect of discontinued medication was harmless).  For

11

example, the ALJ's credibility determination does not appear to have rested on any perceived unwillingness by plaintiff to take medications to control her pain.  *Cf. Frey*, 816 F.2d at 517 (rejecting ALJ's reliance on claimant's failure to take pain medication). With respect to the questionnaire, Dr. Tyler and Ms. Preston do not explain the extent to which the noted side effects impeded plaintiff's ability to function.  The ALJ noted this lack of explanation in her rejection of Dr. Tyler's and Ms. Preston's opinions as "conclusory."  R. at 17.  Given that the ALJ did not draw any negative inferences from plaintiff's medication use, plaintiff does not explain how this information would otherwise lend credibility to her subjective complaints.  As for plaintiff's hearing testimony, plaintiff does not explain the extent of such side effects or why such evidence is sufficiently probative on the issue of credibility so as to trigger the ALJ's duty to discuss it.  This omission is significant given that plaintiff's testimony is contradicted by her representations in the Function Report.  *See Clifton*, 79 F.3d at 1009-10.  Moreover, the above-identified evidence does not overwhelm the ALJ's credibility determination.  *See Musgrave*, 966 F.2d at 1374.

The authority plaintiff cites in her brief does not directly align with the argument she now presents to the Court.  For example, although the court in *Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000), noted that medication side effects can themselves render a claimant disabled or contribute to a disability, as discussed above, plaintiff does not establish that the evidence of medication side effects was uncontroverted or significantly probative on the issue of credibility so as to require the ALJ to discuss such evidence.  In *Figueroa v. Sec. of Health, Educ. and Welfare*, 585 F.2d 551, 553 (1st Cir.

1978), the court remanded a claim for disability where the ALJ failed to consider the plaintiff's claim of "disabling side effects."  Here, however, the Court construes plaintiff's argument as asserting that the ALJ failed to discuss evidence of side effects in evaluating plaintiff's credibility, not that medication side effects were themselves disabling.  Moreover, the ALJ did not fail to elicit testimony from plaintiff regarding side effects.  *Cf. Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981) (criticizing ALJ for failing to elicit testimony or make findings regarding medication side effects).  Although plaintiff cites *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), and correctly states that side effects are relevant in determining an RFC, plaintiff does not indicate what, if any, medication-related limitations the ALJ should have incorporated into plaintiff's RFC or considered at steps four and five.  Thus, when considering plaintiff's argument and the record as a whole, the authority plaintiff relies upon does not mandate remand.  For the foregoing reasons, the Court finds that plaintiff has failed to establish that the ALJ committed reversible error in this aspect of the ALJ's credibility evaluation.

Plaintiff next argues that the ALJ erred in concluding that there was no evidence of deterioration in plaintiff's medical condition after her June 2009 layoff.  Docket No. 9 at 11.  In support of her argument, plaintiff cites to various medical records that plaintiff believes show that her condition worsened over time.  *Id.* at 10-12.  To the extent plaintiff's argument can be construed as asserting that the ALJ's conclusion was not based upon substantial evidence, the Court disagrees.  It appears that, in 2008, plaintiff received treatment for chronic low back pain radiating down the bilateral lower extremities.  R. at 240, 242, 246.  In December 2008, plaintiff complained of additional pain, but, after taking "one or two days off," "continue[d] to work full time."  R. at 238.

13

Pain radiating to the lower extremities continued in 2009, but improved after injections. R. at 234, 236.  However, plaintiff was able to maintain a "busy work schedule," occasionally working late into the evening.  R. at 232.  Plaintiff's pain appears to have worsened temporarily after she was involved in a low speed motor vehicle collision, but the medical records contain no indication that she was unable to perform her work responsibilities.  R. at 230, 228.  Plaintiff's reported symptoms in June and July 2009 are largely consistent with symptoms reported prior to her layoff.  R. at 224, 226.  In September 2009, plaintiff began receiving treatment from Dr. Tyler and Ms. Preston.  R. at 260.  Similar to her prior treatment, plaintiff's doctors recommended trigger point injections, but plaintiff was unable to afford them.  R. at 258.  On November 24, 2009, plaintiff complained of pain extending from the buttocks areas into the bilateral legs.  R. at 256; *cf.* R. at 242, 234.  She continued to be well controlled on her oxycodone prescription, R. at 252, but reported that a recent trigger point injection was unhelpful. R. at 251.  A year after her layoff, plaintiff reported that she could not get her pain under control and was prescribed methodone.  R. at 248.  The methadone appeared to be effective and plaintiff reported to her doctor that she was planning to go to California for an extended vacation.  R. at 286.  In August 2010, plaintiff continued to report leg and low back pain, but expressed that methadone was effective in managing her pain.  R. at 285.  On February 10, 2011, plaintiff reported that numbness in her right leg was occurring more frequently, but that her medications were providing "good pain relief." R. at 280.

Thus, before and after her layoff, plaintiff reported pain in her lower back radiating to her leg.  Although plaintiff's medication changed over time and plaintiff

reported episodic worsening of symptoms, this evidence does not overwhelm the ALJ's conclusion.  *See Flaherty*, 515 F.3d at 1070.  Moreover, plaintiff does not cite to any medical opinion evidence that her condition significantly deteriorated since her layoff that could otherwise call into question the ALJ's conclusion.  Thus, the Court is satisfied that substantial evidence supports the ALJ's conclusion that plaintiff returned to work after her 2006 lumbar surgery and that "there is no evidence of a significant deterioration in the claimant's medical condition since that layoff."  R. at 16.

Plaintiff argues that the ALJ failed to account for the fact that plaintiff was not able to afford additional treatment and the additional non-medical measures that plaintiff took to relieve her pain.  Docket No. 9 at 13.  An ALJ "must not draw any inferences . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as being unable to afford treatment.  SSR 96-7p, 1996 WL 374186, at *7.  Here, there is no indication that the ALJ drew any prohibited inferences or otherwise considered plaintiff's failure to pursue additional treatment in evaluating plaintiff's credibility.  Thus, plaintiff's argument is without merit.

Plaintiff argues that the ALJ erred in considering the fact that plaintiff received unemployment benefits.  Docket No. 9 at 14.  The ALJ noted that receipt of unemployment benefits "is not necessarily inconsistent with a finding of disability," but, when considered in light of other evidence, was "further evidence of a greater functional ability [than] was alleged by the claimant."  R. at 16.  The Court is satisfied that the ALJ applied the proper standard when considering plaintiff's receipt of unemployment benefits.  *See Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (holding that receipt of

15

unemployment benefits is inconsistent with a claim of disability, but is, by itself, insufficient to negate a claimant's credibility); *Hund v. Astrue*, No. 12-cv-01985-LTB, 2013 WL 5729960, at *12 (D. Colo., Oct. 21, 2013) ("ALJ was not precluded from considering the unemployment benefits Plaintiff earned").[2]

As the ALJ's credibility determination is "closely and affirmatively" linked to substantial evidence in the record, the Court will not disturb it on appeal.  *See Kepler*, 68 F.3d at 391.

### 2. Dr. Tyler's Opinion

Plaintiff claims that the ALJ erred in evaluating the opinions contained within the Physical Residual Functional Capacity Questionnaire (the "questionnaire") completed by Dr. Tyler and Ms. Preston.  Docket No. 9 at 17; *see* R. at 273-276.[3]  A treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[2]Plaintiff's remaining arguments are without merit.  Plaintiff points out that Dr. Tyler appears to have discussed with plaintiff her attitude towards long term management of her pain, Docket No. 9 at 13-14, but does not explain why this evidence undercuts any of the ALJ's findings.  Plaintiff also argues that the ALJ failed to account for the fact that plaintiff's subjective complaints were frequently made to physicians. Docket No. 9 at 14.  However, the ALJ's decision indicates that she reviewed all of the medical records in this case, including those instances where plaintiff complained of pain.  R. at 17.  Plaintiff argues that the ALJ erred in "not considering Plaintiff's ability to work in light of the whole record," but does not indicate what additional limitations the ALJ failed to include in plaintiff's RFC.  *See* Docket No. 9 at 14.  Thus, plaintiff's remaining arguments concerning the ALJ's credibility determination are rejected.

[3]Despite the fact that the questionnaire appears to be the collective opinion of both Ms. Preston and Dr. Tyler, for purposes of resolving this appeal, the Court considers the questionnaire to be an opinion from an acceptable medical source and will evaluate the ALJ's treatment of the questionnaire accordingly.  *See Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (noting that only acceptable medical sources, such as licensed physicians, can be considered treating sources).

inconsistent with the other substantial evidence" in the record.  20 C.F.R.

§ 404.1527(c)(2).  The Tenth Circuit has articulated a two-step test for determining

whether the opinion of a treating source is entitled to controlling weight:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96–2p, 1996 WL 374188, at *2 (quotations omitted).  If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  *Id.*  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.  *Id.*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  "A finding that a treating

source's medical opinion is not entitled to controlling weight does not mean that the

opinion is rejected.  It may still be entitled to deference and be adopted by the

adjudicator."  SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996).  The level of

deference accorded a non-controlling opinion of a treating physician depends on a

number of factors, including the length of the treating relationship, the nature and extent

of the relationship, the supportability of the opinion and its consistency with the record

as a whole, and the physician's medical specialization.  20 C.F.R. § 404.1527(c)(2)-(6).

An ALJ need not expressly discuss the application of each factor to each medical

opinion, so long as the ALJ's opinion is "sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th

Cir. 2007) (internal citations omitted).

Omitting a sufficiently thorough explanation for the weight given to the opinion of

a treating physician (if given less than controlling weight) or for the weight given the

opinion of a nonexamining physician is grounds for remand.  *See Frey v. Bowen*, 816

F.2d 508, 515 (10th Cir. 1987) (remanding denial of benefits because ALJ improperly

rejected the treating physician's opinion and relied instead on the findings of a non-

treating physician, which the court found to be "of suspect reliability"); *Andersen v.*

*Astrue*, 319 F. App'x 712, 728 (10th Cir. 2009) (unpublished) (remanding denial of

benefits where ALJ failed to indicate weight accorded to treating physician's opinion

and failed to supply "good reasons" for according opinion that weight).  Similarly,

"[u]nless a treating source's opinion is given controlling weight, the administrative law

judge must explain in the decision the weight given to the opinions of a State agency

medical . . . consultant."  20 C.F.R. § 416.927(e)(2)(ii).

The questionnaire states that plaintiff is "incapable of even 'low stress' jobs," can

walk for zero city blocks without rest or severe pain, can sit for five minutes at a time,

stand for 20 seconds at a time, and sit and stand/walk for less than two hours in a

eight-hour working day.  R. at 274.  The questionnaire states that plaintiff needs to walk

or shift positions while lying down every minute, take constant unscheduled breaks

during an eight-hour workday, and that, if engaging in sedentary work, would be

restricted to lying down.  *Id.* at 275.  The questionnaire limits plaintiff to frequently

carrying less than ten pounds and never performing postural activities, such as twisting,

stooping, or crouching.  *Id.*  Dr. Tyler and Ms. Preston conclude that plaintiff's

impairments are likely to cause her to be absent from work for more than four days a

month and preclude her from performing previous work.  R. at 276.  The record also

includes a letter from Dr. Tyler and Ms. Preston, stating that plaintiff "is not in any

position to work at this time."  R. at 272.

18

The ALJ found the limitations proposed in the questionnaire

> conclusory and inconsistent with other significant evidence of record.  . . .
> Ms. Preston and Dr. Tyler described no clinical findings or objective signs to
> support the extreme limitations they assessed.   Such an omission is
> significant as the treatment records from Ms. Preston and Dr. Tyler does not
> describe clinical findings or objective signs that would support the extreme
> limitations they assessed.  The extreme limitations assessed by Ms. Preston
> and Dr. Tyler are inconsistent with the claimant's activities of daily living, as
> previously described.  Also, the extreme limitations described by Ms. Preston
> and Dr. Tyler are inconsistent with the medical evidence of record.

R. at 17-18 (citations omitted).  As a result, the ALJ did not conclude that the opinions

of Ms. Preston and Dr. Tyler were entitled to controlling weight, instead finding such

opinions "unpersuasive."  R. at 18.

Plaintiff argues that the ALJ failed to articulate her reasoning for rejecting Dr.

Tyler's and Ms. Preston's opinion.  The Court disagrees.  The ALJ acknowledged that

Dr. Tyler and Ms. Preston were treating sources, but determined that their opinions

were unsupported.  R. at 17-18.  Many of the opinions contained in the questionnaire

were expressed by checking a box or circling a number, and Dr. Tyler and Ms. Preston

do not further explain the basis for their suggested limitations by reference to treatment

notes, physical examinations, or clinical findings.  Moreover, Dr. Tyler's and Ms.

Preston's treatment notes primarily discuss plaintiff's medications and do not contain

substantial objective findings concerning the physical limitations contained in the

questionnaire.  *See, e.g.*, R. at 248; R. at 282-83 (stating that EMG/NCV study

produced no abnormal findings).  Although the questionnaire states that plaintiff is

limited to sitting for no more than 5 minutes and walking less than a block, the

treatment notes do not indicate that plaintiff, for example, had difficulty sitting during

appointments or transporting herself to Dr. Tyler's office.  Thus, the ALJ did not err in

19

concluding that Dr. Tyler's and Ms. Preston's opinions were unsupported and declining to assign such opinions controlling weight.

The ALJ also discussed factors relevant to weighing Dr. Tyler's and Ms. Preston's opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6). As discussed above, the ALJ did not err in finding Dr. Tyler's and Ms. Preston's opinion unsupported. *See* § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The ALJ also found that the opinion was inconsistent with the record as a whole. *See* § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The ALJ noted that Dr. Tyler's and Ms. Preston's opinion was inconsistent with plaintiff's activities of daily living. As discussed above, the Function Report, which is largely consistent with plaintiff's hearing testimony, indicates that plaintiff can prepare meals, albeit while using a stool, has the ability to do laundry, can drive a car and go out alone, and shops for food, sometimes with the assistance of a cart. R. at 174-75. This is inconsistent with Dr. Tyler's and Ms. Preston's opinion that plaintiff can stand for only 20 seconds and sit for only five minutes. *Compare* R. at 174-75, *with* R. at 274. The ALJ also found that Dr. Tyler's and Ms. Preston's opinion was inconsistent with medical evidence in the record. As discussed above, substantial evidence supports the ALJ's conclusion that plaintiff experienced pain relief while taking narcotic pain medications. Plaintiff does not directly dispute the ALJ's conclusion that plaintiff's medical records do not describe any "significant abnormalities of spinal range of motion, gait, motor strength or sensation" or "significant dysfunction relating to the claimant's cervical spine, shoulders, elbows, wrists, hips, knees, or ankles." R. at 17. This is sufficient

20

evidence upon which a reasonable mind could accept the ALJ's conclusion.  *See Flaherty*, 515 F.3d at 1070.

Plaintiff refers to an April 16, 2009 treatment note, where plaintiff was determined to have tenderness overlying the SI joint and gluteal region, and a May 14, 2009 treatment note, where plaintiff reported increased pain and difficulty sitting.  R. at 228, 230.  However, plaintiff continued to work during the time period referred to in the notes, so such evidence does not necessarily support Dr. Tyler's and Ms. Preston's opinion that plaintiff is wholly unable to work.  Although plaintiff argues that she has identified aspects of the record which "document clinical findings and objective signs," Docket No. 9 at 17, plaintiff does not explain why such findings and signs are consistent with Dr. Tyler's and Ms. Preston's opinion that plaintiff is extremely limited in her ability to function.  As a result, such evidence does not overwhelm that ALJ's conclusion that Dr. Tyler's and Ms. Preston's opinion was not consistent with the record as a whole.

Plaintiff argues that the ALJ failed to consider the examining relationship, treatment relationship, and specialization factors.  Docket No. 9 at 17-18; *see also* § 404.1527(c)(1), (2), (5).  However, the ALJ is not required to discuss each factor and otherwise sufficiently explained her reasons for finding Dr. Tyler's and Ms. Preston's opinion unpersuasive.  *See Oldham*, 509 F.3d at 1258.  Plaintiff claims that the ALJ improperly concluded that, because Dr. Tyler's treatment of plaintiff may have been conservative, Dr. Tyler's opinions were unsupported.  Docket No. 9 at 17.  However, the ALJ's decision contains no such inference.

The Court is satisfied that the ALJ's reasons for rejecting Dr. Tyler's and Ms. Preston's opinion are sufficiently specific and are supported by substantial evidence.

21

*See Oldham*, 509 F.3d at 1258.[4]

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled

is **AFFIRMED**.

DATED March 30, 2015.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[4]Although plaintiff does not raise the issue, the Court is otherwise satisfied that the ALJ examined "the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citations omitted).  The ALJ discussed the conclusions of reviewing physician Dr. Robert Draper and explained why such conclusions were more consistent with the clinical data contained in the record.  R. at 18.